## THE PEOPLE, *ex rel.* Backus, *vs.* STONE.

Where S. was convicted for a contempt in violating an injunction upon a creditor's bill, and was fined $3000 for the damages sustained by the complainant by such misconduct; and a mittimus was issued to the sheriff of the county of Niagara to commit to the common jail of the county, upon which mittimus he was arrested by the sheriff; and S. immediately sued out a writ of habeas corpus before the first judge of the county, and such first judge, when S. was brought before him, directed notice of the hearing to be given to the complainant's solicitor, and by a written order committed S. to the custody of the sheriff in the mean time, and the sheriff omitted to keep S. in custody but allowed him to go at large until the time for the hearing, when he produced him before the judge and the judge remanded him to prison; and the sheriff, when S. was so remanded to prison, took him to his sitting room in the court house where he resided, being a part of the building appropriated for the common jail, and did not confine or imprison him by locking the door or otherwise; *Held*, that suffering the prisoner to go at large, pending the proceedings upon the habeas corpus, was an escape.

*Held further*, that suffering the prisoner to go at large in the sheriff's sitting room, after he was remanded to prison, was also an escape.

*Held also*, that the sheriff was guilty of a contempt in thus suffering the prisoner to go at large, and in wilfully refusing and neglecting to execute the process of the court committing S. to prison.

Where a defendant who is imprisoned in execution is brought up by the sheriff, upon a habeas corpus before a judge or commissioner at a place distant from the prison, and such defendant is to be detained a short time only, and it would be inexpedient to transport him back to the jail for safe custody until the decision upon the habeas corpus, it will not be an escape, or a contemning of the process of the court, for the sheriff to detain him in actual custody out of the common jail, although the prisoner is committed to the custody of the sheriff who brings him up.

But as such prisoner is still in the custody of the sheriff, under the original process of commitment, as well as under the order of the judge, it is an escape if the sheriff voluntarily suffers him to go at large without restraint.

Where a sheriff is ordered by a writ of habeas corpus to bring up the body of a person in execution, it is his duty to convey him by the shortest and most convenient route to the court or officer where the writ is returnable. And if he takes the prisoner by any other than the shortest and most convenient route, merely to accommodate him, or suffers him to go at large to attend to his own affairs, it is an escape although he has him at the return of the writ.

So where the habeas corpus issues at one term and directs the sheriff to bring up a prisoner who is in execution, before the court at the ensuing term, if the sheriff lets him go at large in the mean time, it is an escape; although he appears with him in custody at the return of the writ.

The statute relative to the proceedings upon habeas corpus gives no authority

to the judge or commissioner to permit the prisoner to go at large, until the decision of the case upon the habeas corpus.

It is an escape, if a sheriff permits a prisoner, who is committed to prison upon a conviction for a contempt, to go at large in the sitting room occupied by the sheriff's family, although such sitting room is a part of the building which contains the jail. For it is the sheriff's duty to keep such prisoner in that part of the building which is appropriated for the prison, and in the same manner as by law he is required to keep prisoners charged with criminal offences.

It is a misdemeanor at the common law for the sheriff to permit a prisoner, charged with a criminal offence, and committed for trial, to go at large out of that part of the building appropriated for the purposes of a prison, into the part occupied by the sheriff as a residence for himself and his family, and without taking any precautions against an escape.

Where the U. S. district judge issued a habeas corpus directing the sheriff to take a prisoner, who was in jail upon a conviction for contempt, before the prisoner's assignee in bankruptcy, at his office in Lockport, at all times required by such assignee, for the purpose of arranging, explaining and aiding in making out the accounts of the bankrupt's estate, and such sheriff, after receiving such habeas corpus, permitted such prisoner to go at large; *Held*, that this was an escape.

*Held also*, that the sheriff, under such a writ of habeas corpus, was not authorized to carry the prisoner to any other place than the office of the assignee, nor to remain at such office with him for any longer time than the assignee himself remained there. And that when the assignee left his office, it was the sheriff's duty to take the prisoner back to jail, and to return with him to the office from time to time when the assignee required his attendance there for the purposes intended by the habeas corpus.

*Held further*, that such habeas corpus gave to the assignee no right to the custody of the prisoner, nor any right to direct the sheriff in the execution of his duty. Nor did it give him the power to discharge the prisoner, or to keep him out of the prison for an indefinite period.

In the case of a habeas corpus ad testificandum, the prisoner is to be taken by the most direct and convenient route, and at the proper time, to the court or place where the prisoner is to give his evidence; and after that purpose is accomplished the sheriff must return with him directly to prison.

And if the sheriff voluntarily suffers the prisoner to go at large, out of his custody, in the mean time, or if he goes with him out of the way, to accommodate him and answer his own purposes, and not in the accomplishment of the legitimate purposes of the writ, it is an escape for which the sheriff is liable.

THIS was an appeal by the defendant from an order of the vice chancellor of the eighth circuit. L. A. Spalding was convicted for a contempt, in violating an injunction upon a creditor's bill, and was fined $3000 for the damages sustained by the complainant, by such misconduct, in addi-

1844.

The People
v.
Stone.

April 2.

tion to the costs and expenses of the proceedings. A mittimus was issued upon this conviction to commit him to the common jail of the county of Niagara ; upon which he was arrested by the defendant as sheriff of that county, on the 7th of May, 1842. Spalding immediately sued out a writ of habeas corpus before the first judge of that county ; and upon being taken before such judge by the sheriff, notice was directed to be given of the hearing, to the complainant's solicitor, and by a written order of the judge, Spalding was committed to the custody of the defendant, as sheriff, in the mean time. The sheriff did not keep him in custody, but permitted him to go at large until the time appointed for the hearing, when he produced him before the judge, who remanded him to prison. The sheriff, instead of taking Spalding to prison, took him to the office of his solicitor, when J. Center, a supreme court commissioner, was called in, who allowed a new habeas corpus. And although the complainant's counsel was present and made oath that he was authorized to appear for the solicitor and waived any further notice, Spalding's solicitor insisted upon having the decision postponed until a notice could be served on the complainant's solicitor, who resided in Monroe county. The commissioner thereupon adjourned the hearing for about eight days, and made a written order committing Spalding to the custody of the sheriff, in the mean time, who again suffered him to go at large. On the 27th of May the sheriff attended with Spalding before the commissioner, who again remanded him to prison. Spalding immediately sued out a third writ of habeas corpus, before the circuit judge, who directed notice to be given to the complainant's solicitor, and in the mean time committed Spalding to the custody of the sheriff, by virtue of a written order, until judgment should be given on that writ of habeas corpus. The sheriff again suffered him to go at large until the day of hearing, the 4th of June, when the circuit judge remanded him to prison. The sheriff thereupon took him into his parlor or sitting room, in the court house, where the sheriff resided with his family ; and without con-

fining or imprisoning him by locking the doors or otherwise, suffered him to remain there until the 8th of June, when the sheriff was served with a writ of habeas corpus issued by the district judge of the United States for the northern district of New-York, under the bankrupt law, directing the sheriff to have the body of Spalding before L. H. Nichols, his assignee in bankruptcy, at his office in Lockport, from time to time and at all times required by such assignee, for the purpose of arranging, explaining, and aiding in making out the accounts of the estate. Under this writ the sheriff took Spalding before the assignee, and by his direction suffered him to go at large until the assignee should notify him that he no longer required his services. The sheriff suffered Spalding to go thus at large wheresoever he pleased, until the 1st of July, when he was notified by the assignee that he did not want Spalding any longer for the present; upon which the sheriff again took him into custody. Spalding then obtained the allowance of a fifth writ of habeas corpus by commissioner Center, who on the same day made an order committing him to the custody of the sheriff until judgment should be given upon the return to that writ. The sheriff again suffered him to go at large until the 1st of August, when the commissioner remanded him to prison. But as the assignee in bankurptcy then told the sheriff that he again wanted Spalding, the sheriff did not commit him, but suffered the assignee to send him to New-York and other places, on business; and Spalding was still at large when the sheriff was examined on the proceedings against him, for a contempt, for neglecting to confine and imprison Spalding, as directed by the order and mittimus of the vice chancellor. Upon hearing of the matters of complaint against the sheriff for his misconduct, the vice chancellor decided and adjudged, that he was guilty of a contempt in not executing the process of the court and committing Spalding to the common jail of the county of Niagara; in voluntarily allowing him to escape and go at large without control or restraint; and in wilfully refusing and neglecting to execute such process;

and further that such misconduct of the sheriff was calculated to and did actually impair, impede and prejudice the remedies of the complainant. He therefore ordered the appellant to pay a fine of $250, and the further sum of $77,04 for the costs and expenses of the proceedings.

*S. Stevens*, for the appellant.

*H. R. Selden*, for the respondent.

THE CHANCELLOR. No one who looks into the papers which were before the vice chancellor can doubt, that the whole proceedings on the part of Spalding, under the various writs of habeas corpus, were for the sole purpose of preventing the due course of justice, and to evade the process issued by the court to enforce the order of the vice chancellor. And I think there is very little room to doubt that the appellant, knowingly and intentionally, allowed himself to be used by Spalding as an instrument for that purpose; instead of executing the process of the court and imprisoning Spalding in the common jail, as he was in duty bound to do under the order of the vice chancellor. I am not prepared to say that he was technically bound to imprison Spalding in the common jail pending the proceedings upon the various writs of habeas corpus; but as Spalding was then actually committed and in execution, for a contempt, the order committing the prisoner to his custody, pending the proceedings, was no excuse or justification for suffering him to escape and go at large. The statute directs that, until judgment shall be given upon the return to the habeas corpus, the court or officer before whom the party is brought may either commit such party to the custody of the sheriff of the county in which such court or officer shall be, or place him in such care or custody as his age and other circumstances may require. (2 *R. S.* 568, § 47.) Where a defendant who is imprisoned in execution is brought up by the sheriff, before a judge or commissioner who is at a distance from the prison, and such defendant is to be detained only a short time, so that it would be inexpedient to

1844.

The People
v.
Stone.

be at the trouble and expense of transporting him back to the jail for safe keeping until the decision upon the habeas corpus, and the prisoner is committed to the custody of the sheriff who brings him up, it would not be an escape, or a contemning of the process of the court for such sheriff to detain him in actual custody out of the common jail. But as the prisoner, in such a case, is still in the custody of the sheriff under the original process of commitment as well as under the order of the judge, it is an escape if the sheriff voluntarily suffers him to go at large without restraint. The habeas corpus, and the commitment to the sheriff who brings the prisoner up until the case can be disposed of, is an excuse to the sheriff for not having the prisoner in custody in the common jail in the mean time when it cannot be conveniently done. But such commitment is no discharge of the prisoner from the original arrest, so as to excuse the sheriff for permitting him to escape or go at large.

Where the sheriff is ordered, by a writ of habeas corpus, to bring up the body of a person in execution, it is his duty to convey him by the shortest and most convenient route to the court or officer where the writ is returnable. And if he goes elsewhere with the prisoner to accommodate him, or suffers him to go at large about his own affairs, although he has him at the return of the writ, it is an escape. So where a habeas corpus issues at one term, to bring a prisoner, who is in execution, before the court at the ensuing term, if the sheriff lets him go at large in the mean time it is an escape; although he appears with him in custody at the return of the writ. (*Roll. Abr. Escape D. Balden* v. *Temple, Hob. Rep.* 202. *Williams* v. *Lister, Hardr. Rep.* 4. *Cro. Car.* 14, 466. *Wat. Sheriff,* 139. *Mosedell's case,* 1 *Mod. Rep.* 116.) Suffering Spalding to go at large, therefore, pending the proceedings upon the four writs of habeas corpus issued by the officers of this state, were voluntary escapes permitted by the sheriff. The advice of the judge or commissioner, even if it had been that the sheriff should suffer the prisoner to go at large, was entirely extra-judicial and could not justify the escape. The statute gives no authori-

ty to the judge or commissioner to permit the prisoner to go at large. He has authority to commit the prisoner to the care or custody of some other person than the sheriff until the decision upon the habeas corpus. But even such directions would have been an abuse of the power of the officers who issued the writs of habeas corpus in this case ; although if such orders had been made they would have protected the sheriff in the mean time. But an order that the sheriff should suffer the prisoner to escape and go at large pending the proceedings upon the habeas corpus, would not have been within the authority intended to be granted by the statute.

Again ; it was an escape to permit the prisoner to go at large in the sitting room occupied by the defendant's family. The prisoner was committed to prison not as a mere debtor, entitled to the limits of the jail, but upon a conviction and as a punishment for misconduct of which he had been guilty by his breach of the injunction. He was therefore required to be kept in prison in the common jail of the county. And the sheriff's sitting room was no part of the common jail, although it was under the same roof. The statute directs that the keeper of the county prison shall receive and safely keep every person duly sentenced to imprisonment in such prison, upon conviction for any contempt or misconduct, or for any criminal offence ; and that he shall not, without lawful authority, let out of prison, on bail or otherwise, any such person. (2 *R. S.* 755, § 7.) It was the duty of the sheriff, therefore, to keep Spalding in that part of the building appropriated for the prison, and in the same manner as by law he was required to imprison and detain persons charged with criminal offences, or who were committed for trial. And it would unquestionably have been a misdemeanor, by the common law, for the sheriff to have permitted a prisoner charged with a criminal offence, and committed for trial, thus to go at large out of that part of the building appropriated for the purposes of a prison ; and without any precautions against an escape, in case the prisoner chose to leave the part of the building used for the

1844.

The People
v.
Stone.

residence of the sheriff's family. This proceeding on the part of the appellant was an absolute trifling with the mandate of the vice chancellor which directed Spalding to be imprisoned for his misconduct until the fine and costs of the proceedings were paid.

After this farce, of an imprisonment in the sheriff's parlor or sitting room for four days, had been gone through with the habeas corpus in the bankruptcy proceedings arrived. And the prisoner was again permitted to go at large for nearly a month, and to travel from one part of the state to another, under the pretence that the sheriff was obeying the habeas corpus which directed him to take the prisoner before the assignee in bankruptcy, at his office in Lockport, from time to time, for a specified purpose. As that writ only directed the sheriff to take the prisoner before a particular individual from time to time, and at a specified place, the sheriff was not authorized to take or to permit him to go to any other place than the office of the assignee, nor to remain at such office with him any longer than the assignee himself chose to stay. And when the assignee chose to leave his office for the night, it was the duty of the sheriff to take his prisoner back to jail, and to return with him in the morning if the assignee required his attendance de die in diem. The sheriff says the assignee threatened him with proceedings for a contempt if he did not let him do as he pleased with the prisoner, and as long as he wanted him. But both parties probably knew that the assignee had no authority to make such a requirement; and I cannot find that either of them has ventured to swear they believed he had. If they are men of ordinary intelligence they could not have supposed that the writ gave any such power to the assignee as he pretended to claim. Had the object of the assignee really been to obtain information from Spalding relative to his estate, instead of colluding with him to keep him out of jail, it would have been much less expense for the assignee to have gone to Spalding at the sheriff's sitting room, where the latter had perfect leisure to give him the needed information, than to send a petition to the

district judge to obtain a habeas corpus to bring Spalding to his office.

The vice chancellor is right in supposing that this habeas corpus, issued by the district judge, could only protect the sheriff so far as he was acting in obedience to the writ ; as upon a habeas corpus ad testificandum. Upon such a writ the prisoner is to be taken by the most direct and convenient way, and at the proper time, to the court or place where he is to give his evidence ; and after that purpose is accomplished the sheriff must return with him directly to prison. And if the sheriff voluntarily suffers the prisoner to go at large out of his custody in the mean time, or if he goes with him out of the way to accommodate the prisoner, or to answer his individual purposes, and not in the exercise of the legitimate purposes of the writ, it is an escape for which the sheriff is liable. This habeas corpus gave the assignee no right to the custody of the prisoner, or to direct the sheriff in the execution of his duty. Much less did it give him the power to discharge Spalding from prison for an indefinite period, or to send him about the country upon the business of the assignee, although that business related to the bankrupt's estate. And no man of intelligence could, from the terms of the writ, for a moment suppose that the judge who allowed it ever intended to give the assignee any such power. The whole proceeding, therefore, was a mere pretence for releasing Spalding from imprisonment and permitting him to go at large for an unlimited time.

In relation to the amount of the fine imposed for this gross dereliction of duty on the part of the sheriff, if there was any error it was in not making it much larger. I infer from the evidence that Spalding had assigned his property to the receiver, for the benefit of the complainant, long before the decree in bankruptcy. If so the proceeds of the property converted, in violation of the injunction, belonged to the receiver, to be applied to the discharge of the complainant's debt, and not to the assignee in bankruptcy. And the permitting of the prisoner to go at large, instead of committing him to close custody until he paid over the pro-

ceeds of that property in discharge of the fine, has probably
deprived the complainant of a very considerable portion of
his debt.    Public policy also required that the vice chan-
cellor should visit such a gross perversion of the course of
justice with an exemplary punishment.

For these reasons I think there was no error, in the order
appealed from, of which the appellant has any reason to
complain.   The order must therefore be affirmed with costs;
and with interest on the amount of the fine and costs, spe-
cified in the order, from the time of the appeal until the
entering the decree of affirmance, as damages to the re-
spondent for the delay and vexation caused by this appeal.