MADGE GREISNER

*v.*

ARTHUR K. GREISNER.

[Decided April 7th, 1916.]

1. It is unlawful for the sheriff to appoint a special deputy *pro hac vice* by parol, but all such deputizations must be in writing.

2. Where the defendant in a wife's maintenance suit was arrested by a constable, without any written authority from the sheriff, on a writ of *ne exeat*, and the sheriff ratified the act by taking the defendant into his own custody and keeping, or pretending to keep him in custody, by virtue of the writ, the defendant was properly taken into custody by the sheriff and was a lawful prisoner under the writ.

3. A sheriff will not be punished by an adjudication for contempt, depending upon a controversy between him and the petitioner's solicitor regarding the amount of fees which the sheriff was entitled to charge for executing a writ, as for such cause of action, if any, there is a remedy in the courts of common law.

4. Evidence on a motion to charge the sheriff with contempt for permitting the escape of defendant in wife's maintenance suit, arrested on a writ of *ne exeat*, *Held* to show that the prisoner had been permitted to go at large.

5. The writ of *ne exeat* is a "mesne process."

6. There is a difference in the result between an escape permitted under final process, which is punitive in its nature, and escape permitted under mesne process, issued merely to bring defendant into court on the return day, or at such other times as his presence may be required; and while under final process a creditor has the right to the body of his debtor, until the debt is paid, and if he escapes has an action of debt under the statutes against the sheriff to recover the whole debt, yet the sheriff, arresting under mesne process, discharges his duty and will be absolved from any charge of contempt if he brings the defendant before the court on the day of return, or when the suit requires it.

On motion to charge sheriff with contempt.

*Mr. Albert Hughes,* for the motion.

*Mr. Elmer King, contra.*

HOWELL, V. C.

The original cause, of which this motion is an outbranch, is a maintenance suit brought by the complainant against her husband in which a decree was entered requiring him to pay her the sum of $8 per week for the support of herself and the children. On May 3d, 1915, a writ of *ne exeat* was issued in the cause directed to the sheriff of Morris county commanding him in the usual form to cause the defendant, Greisner, to come before him and give bail in the sum of $1,000, and in default thereof to commit him to the common jail of the county. This writ came to the hands of the complainant's solicitor. He communicated by telephone with the office of the sheriff and requested him to send an officer to Dover to execute the writ which the petitioner's solicitor would there deliver to him. Neither the sheriff nor the under-sheriff responded to the solicitor's request, but there was sent to Dover, by someone in the sheriff's office, a constable named Newkirk, who was in attendance at the sheriff's office. The solicitor gave the writ to him; he executed it by taking Greisner into custody. The constable then took him to Morristown and delivered him to the sheriff, who accepted the delivery and who confined him, in so far as he was confined at all, to the common jail of the county, in default of the bail demanded.

It is alleged that the sheriff having accepted the custody of the defendant was under the duty of keeping him actually confined in the common jail, and that on his failure to do so he permitted an escape for which he is liable to process of contempt. Newkirk was not especially deputized, in writing, to serve the writ, neither was he an under-sheriff capable of executing the same without such special deputization. It was held, by the court of errors and appeals in *Meyer* v. *Patterson, 28 N. J. Eq. 239*, that it was unlawful for the sheriff to appoint a special deputy *pro hac vice* by parol, but that, on the contrary thereof, all such deputizations must be in writing. Yet, it was further held, in the opinion in that case, that a person who held himself out as a sheriff's deputy, apparently clothed with the right to execute the writ of the court, assumes the function not of a private but of a public office, and that when it clearly ap-

pears that the sheriff recognized such assumption of authority by a ratification of the act done, or otherwise, the public, and all the persons taking part in the business, have a right to accept such person for what he claims and is admitted to be without examining into the regularity of his credentials. The rule thus announced seems to apply to the case in hand with great exactness. The arrest was made by the constable without any written authority from the sheriff, yet the sheriff recognized the act and ratified it by taking the defendant into his own custody and keeping him, or pretending to keep him, in custody by virtue of the requirements of the writ of *ne exeat.* I must, therefore, hold that the defendant, Greisner, was properly taken into custody by the sheriff and that he is a lawful prisoner under the said writ.

While the defendant was so in custody of the sheriff proceedings were taken against him for contempt in not obeying the directions of the order of the court of chancery to pay his wife and children $8 per week. These proceedings resulted in a writ of commitment against Greisner for contempt, and this writ was mailed by the petitioner's solicitor to the sheriff at Morristown, but no fees were enclosed for its service. The petitioner's solicitor was promptly notified that the fees must be paid before the service would be made, it being claimed by the petitioner's solicitor that the sheriff had overcharged him for service of the writ of *ne exeat,* and that there remained in the hands of the sheriff sufficient moneys to pay the lawful fee for executing the commitment. This question I do not propose to decide any further than to say that I am unwilling to visit upon the sheriff so large and ample a punishment as an adjudication for contempt which depends for its foundation upon a controversy between him and the solicitor with regard to the amount of fees that he is entitled to charge for executing a writ; for such cause of action, if any such exists, he may have his remedy in the courts of common law.

The next question is, whether the sheriff having the defendant in custody under the writ of *ne exeat* permitted him to escape from such custody, and, if so, what consequences arise therefrom? It was testified to by several witnesses that the de-

fendant, Greisner, was seen by them at various points in the city of Morristown and on various occasions apparently alone and not in anybody's custody; thus it was testified that he was seen talking to an officer on Speedwell avenue; that he was seen on the sidewalk in front of Voorhees' hardware store; that he was seen on Washington street near the Mansion House; and it was proved and admitted that special favors were shown to him by permitting him to wander about the jail and court house at will, and that he was not kept in confinement as required by the writ and the law. I think it is clearly proved that the defendant was seen by the witnesses as they described. I find in the testimony no positive denial. An order was made by the court permitting the sheriff to bring Greisner before the court at the hearing. He was actually in court during the time the testimony was being taken. If anyone knew whether he had been permitted to wander about the streets of Morristown alone it was he, and yet the sheriff did not see fit to call him, neither was the sheriff himself sworn. I must assume, therefore, that the witnesses spoke the truth and that statements they make about Greisner being at large are true.

The authority relied upon by counsel for the motion on this point is *People* v. *Stone, 10 Paige Ch. 606.* I fully concur in what the learned chancellor says on the point in his opinion in that case, but it will be observed that in that case the question arose out of a committal on final process by way of punishment. In other words, the writ under which the defendant was imprisoned in that case was a punitive writ based upon the final judgment of the court, while, in the case at hand, the writ is one for appearance only and contains no element of punishment.

There is a wide difference in the results between an escape permitted under final process and an escape permitted under mesne process, for the reason that one is punitive in its nature and the other is issued merely for the purpose of bringing the defendant into court on the return day or at such other time or times as his presence may be required. The writ of *ne exeat* is, undoubtedly, mesne process. It was held in *Adams* v. *Whitcomb, 46 Vt. 708,* that "the writ of *ne exeat,* as at present used in this country, is a mesne process issuing from the court of

chancery to hold a party to equitable bail that he may not depart from the realm or the jurisdiction of the court, but be present with his body to answer any decree which the court of chancery may make in the case against him and commanding the arrest and imprisonment of the defendant if he or she fails to furnish such bail." The difference between escapes under mesne and final process is discussed in *Browning's Executor* v. *Rittenhouse, 40 N. J. Law 230*. There the supreme court said that in arrests upon mesne process the officer discharges his duty if he brings in the body of the defendant on the day of the return, but that under final process the creditor has a right to the body of his debtor every hour until the debt is paid, and, if the prisoner escapes, may bring an action of debt upon the statutes against the sheriff in which he may recover the whole debt.

If, therefore, the sheriff shall produce the body of the defendant before the court, whenever the exigency of the suit may demand it, he will be absolved from liability. Otherwise, he must remain liable to such remedies as the complainant has a right to pursue.

For these reasons I have come to the conclusion that the sheriff is not liable in this case to any adjudication of contempt, and I will advise an order dismissing the proceedings, but without costs.